[No. B022489. Second Dist., Div. Three. Feb. 10, 1988.]

CITY OF AGOURA HILLS, Plaintiff and Appellant, v.
LOCAL AGENCY FORMATION COMMISSION OF LOS
ANGELES COUNTY, Defendant and Appellant.

COUNSEL

Gregory W. Stepanicich, City Attorney, Richards, Watson & Gershon, Rochelle Browne and Gregory W. Stepamcich for Plaintiff and Appellant.

De Witt W. Clinton, County Counsel, and Jonathan B. Crane, Deputy County Counsel, for Defendant and Appellant.

Diane M. Griffiths, Robert E. Leidigh, Kathryn E. Donovan, John G. McLean, Lilly Spitz and Margarita Altamirano as Amici Curiae on behalf of Defendant and Appellant.

## OPINION

BAKER, J.*—A dispute between a city and a county agency regarding plans for the city's boundaries brings this case to court. The dispute focuses on the implementation of legislation enacted to discourage "urban sprawl" and to encourage the "orderly formation and development" of local governments in each county.

Petitioner and appellant City of Agoura Hills (City) is a municipal corporation located in the County of Los Angeles (county). Respondent and appellant Local Agency Formation Commission of the County of Los Angeles (LAFCO) is a countywide agency charged with responsibilities under the Cortese-Knox Local Government Reorganization Act of 1985 (Gov. Code, § 56000 et seq.).[1]

The appeals filed by both parties in this case pertain to the adoption by LAFCO for the City of a "sphere of influence," (hereafter sometimes sphere) which is defined as "a plan for the probable ultimate physical boundaries and service area of a local agency." (§ 56076.) The City objects that LAFCO refused to adopt the sphere it sought; instead, LAFCO adopted a considerably smaller sphere, virtually coextensive with the City's existing boundaries with the exception of one additional tract area. On the City's motion, the trial court granted a judgment for peremptory writ of mandate commanding LAFCO to set aside this sphere of influence. The basis of the judgment was the court's ruling that LAFCO's written findings were "legally inadequate." LAFCO appealed from this judgment. The City also appealed from portions of the judgment. We find that LAFCO's written findings were legally adequate and therefore reverse the judgment.

### ISSUES ON APPEAL AND DISPOSITION

The appeals challenge various rulings made by the trial court, first in granting an interlocutory judgment for peremptory writ of mandate and then in granting a judgment for peremptory writ of mandate, both setting

---

* Assigned by the Chairperson of the Judicial Council.
[1] As the City noted in its brief, the Cortese-Knox Act, which became effective January 1, 1986, represented consolidation and renumbering of the District Organization Act of 1965 (former Gov. Code, § 56000 et seq.); the Municipal Organization Act (former Gov. Code, § 35000 et seq.); and the Knox-Nisbet Act (former Gov. Code, § 54733 et seq.). The text of these provisions have, with minor procedural exceptions, remained basically unchanged by this consolidation and renumbering. (See Cortese-Knox Act, Gov. Code, § 56100.)
Unless otherwise noted, all statutory references will be to the Cortese-Knox Act currently in effect, Government Code section 56000 et seq.

aside LAFCO's sphere adoption. The issues litigated below and now raised on appeal include:

1. Do the applicable statutes require, as the City alleges, that the sphere of influence adopted for the City extend beyond its existing boundaries and is LAFCO's decision therefore invalid?

2. Is LAFCO's decision supported by substantial evidence in the record?

3. Were LAFCO's findings, "the written statement of its determinations," adequate under section 56425?

4. Does the California Environmental Quality Act (CEQA), Public Resources Code section 21000 et seq., apply to the sphere of influence proceedings in this case? If so, was the City barred from bringing a claim by the 180-day statute of limitations set forth in the act?

5. Does Government Code section 84308 of the Political Reform Act (herein section 84308) apply to the sphere of influence proceedings? If the act applies, is the second decision made without the "disqualified" commissioners still invalid, as the City alleges, because it was not the product of "an entirely new proceeding"?

We agree that LAFCO's written statement of its determinations was not good and we do not recommend the statement as a model. Although not exemplary, LAFCO's written statement is adequate under section 56425, especially in view of the provisions of section 56107 and the facts and circumstances of this case presented in the record on appeal. Since the final judgment setting aside LAFCO's decision was based solely on the trial court's erroneous finding that the written statement was not adequate, we reverse the judgment.

We conclude that the record upholds the trial court's finding that substantial evidence exists to support the sphere decision and that there was no prejudicial abuse of discretion by LAFCO. The applicable statutes do not require LAFCO to adopt a sphere extending beyond city boundaries.

We also find that CEQA is not applicable to LAFCO's proceedings in this case. The record supports the trial court's determination that the sphere adoption here is not a "project" subject to CEQA; the adoption could not possibly have a significant effect on the environment. In view of this ruling, the 180-day statute of limitations issue does not need to be addressed.

Finally, we conclude that LAFCO and the Fair Political Practices Commission (FPPC) as amicus curiae correctly assert that a sphere of influence proceeding does not confer "an entitlement for use"; thus, Government Code section 84308 is not applicable to this case.[2]

## PROCEDURAL AND FACTUAL BACKGROUND[3]

### A. *Creation of LAFCOs and Their Duties.*

In 1963, the Legislature established a LAFCO in each county to discourage "urban sprawl" and encourage the "orderly formation and development" of local governments in each county. (See Knox-Nisbet Act, former Gov. Code §§ 54774 and 54774.5; Cortese-Knox Act, Gov. Code §§ 56300, 56301 and 56425.) One of LAFCO's important functions is the adoption for each city of a "sphere of influence." (§§ 56425 and 56426, formerly §§ 54774, 54774.1, 54774.2 of the Knox-Nisbet Act.) Another one of LAFCO's important duties is to approve or disapprove annexation proposals submitted by cities within the county. (See *Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 263, 268 [118 Cal.Rptr. 249, 529 P.2d 1017]; *Simi Valley Recreation & Park Dist.* v. *Local Agency Formation Com.* (1975) 51 Cal.App.3d 648, 668-669 [124 Cal.Rptr. 635].)

The creation, composition, purposes, powers and duties of LAFCOs are fully set forth in the aforementioned legislation. Section 56326 provides that in Los Angeles County, the commission shall consist of seven members, representing the county and the cities in the county.[4] Section 56334 provides that the term of office of each member shall be four years.

### B. *The Sphere of Influence Adopted on January 9, 1985.*

On November 14, 1984, and January 9, 1985, LAFCO held a public hearing concerning the sphere of influence for the City. The commission took testimony at the hearing, considered correspondence from residents and interested parties, and reviewed staff recommendations and reports. At the January 9, 1985, meeting LAFCO voted on the sphere and adopted

---

[2] Arguably, LAFCO's second decision complies with section 84308; this decision was made in compliance with the interlocutory judgment ordering that allegedly "disqualified" commissioners not vote or participate in making the sphere decision. We need not decide this issue of compliance, however, because of our ruling that section 84308 is not applicable.

[3] The factual and procedural background is gleaned from the administrative record and the clerk's transcript on appeal. The reporter's transcript of the proceedings in the trial court was also reviewed.

[4] The composition of LAFCO in Los Angeles County was the same under the Knox-Nisbet Act (former Gov. Code, § 54780.1).

determinations set forth in the minutes of the meeting. The vote was unanimous. The sphere consisted of the City's existing boundaries plus a development identified as Tract Map 34827.

### C. *Interlocutory Judgment Proceedings.*

On July 16, 1985, the City filed a petition for peremptory writ of mandate seeking a writ ordering LAFCO to set aside its decision. The City cited grounds now raised on appeal, including LAFCO's violation of Government Code section 84308; LAFCO's failure to comply with CEQA; LAFCO's failure to comply with the statutory mandate of the Knox-Nisbet Act by limiting the City's sphere and by failing to prepare adequate written findings. The City also claimed that LAFCO's decision was not supported by substantial evidence.

With respect to their contention that LAFCO violated section 84308, the City alleged that Commissioners Michael D. Antonovich and Hal Bernson had improperly participated in the sphere proceedings because each had accepted campaign contributions in excess of $250 from interested developers.[5]

LAFCO filed an answer in opposition to the City's petition and a motion for a judgment denying the petition for writ of mandate. The motions were then heard by Superior Court Judge Irving Shimer on December 4, 1985. The entire administrative record was admitted into evidence. Judge Shimer limited his ruling to the Political Reform Act issue and granted the City's petition and set aside the sphere decision based on his finding that section 84308 was applicable and that LAFCO had failed to comply.

The judge made it abundantly clear that an entirely new proceeding was unnecessary. He advised: "I think the city's case is very, very, very weak and I don't propose to reopen this for a new hearing because I don't think that is necessary. [¶] I don't have any indication in the record that Berson [*sic*] or Antonovich participated other than Antonovich saying hello to Whizzin and voting at the end. If I'm right in that regard, then I'm prepared to have the commission presently constituted review the record with or without a new hearing as it elects alone, and proceed to a decision and vote if it so choses [*sic*] without any disqualified persons participating." The

---

[5] In addition to asserting that section 84308 did not apply to the sphere proceedings, LAFCO disputed the City's factual allegations. While acknowledging that Commissioner Antonovich had voted on the sphere issue, LAFCO asserted that Commissioner Bernson, while present at the November 1984 proceeding, did not vote or participate in making the sphere decision.

judge added, "I don't see the need for new hearings in view of the volume and testimony of the volumes submitted." Although the judge declined to rule on any issue other than the applicability of section 84308, in response to the City's specific inquiry about the "existence of substantial evidence," the judge repeated, "I said your case is very, very, very weak."

In an interlocutory judgment filed on December 18, 1985, Judge Shimer ordered that a peremptory writ of mandate issue setting aside the sphere of influence adopted on January 9, 1985. The court ordered that LAFCO adopt a sphere for the City within 75 days and "disqualify from participation in said adoption those officers or members of respondent who may have accepted a contribution of $250.00 or more from a participant in the adoption proceedings within the meaning [of] Government Code Section 84308." The judge further ordered that LAFCO was "[t]o base said adoption upon documents and testimony previously presented to respondent at the public hearings previously held with respect to said sphere of influence and upon such other evidence presented at any further properly-noticed, public hearings, *if any*, which respondent, *in its sole discretion might elect to receive* ; . . ." (Italics added.)

D. *Proceedings Adopting the Sphere of Influence on February 12, 1986.*

Without conceding the applicability of section 84308, LAFCO proceeded to comply with the court's order. At a meeting on February 12, 1986, the commission adopted the same sphere of influence that had been adopted on January 9, 1985, without the participation of any "disqualified" commissioners.

The commissioners were given an opportunity to reopen the adoption item for public hearing, but no one made any motion to do so. LAFCO's Executive Officer, Ruth Benell, referred to the earlier hearings and observed that "[t]he members of the Commission have received copies of all of those staff reports and minutes, as well as the transcripts of those meetings, as well as the transcript of the court hearing. [¶] There do not appear to be any changes of circumstances or conditions that would affect the adopted sphere of influence for the City of Agoura Hills at this time." Chairman Kenneth I. Chappell determined that all members of the commission had had the opportunity to review the transcripts of the previous commission meetings.

E. *Proceedings on the Judgment for Peremptory Writ of Mandate.*

After the adoption proceedings and vote on February 12, 1986, LAFCO filed a notice of compliance with the trial court and a second motion for

judgment denying writ of mandate. The City, in turn, filed its second motion for peremptory writ of mandate. These motions involved the same issues raised in the earlier motions and now on appeal, with one exception; in their second motion, the City did not specifically raise any claim under the Political Reform Act. The City acknowledged that LAFCO's action on February 12, 1986, "may have cured the prior violation of Government Code Section 84308." The City, however, asserted that LAFCO's action in readopting the sphere of influence without considering any additional evidence was further indication of prejudicial abuse of discretion.

The administrative record was received into evidence. After hearing argument, the judge told counsel, "I am satisfied that there is substantial evidence to support the decision and there is no prejudicial use [*sic*] of discretion with respect to the decision of LAFCO as to this sphere of influence for the City of Agoura Hills." On the issue of substantial evidence and abuse of discretion, the court designated the colloquy with counsel and the decision announced during the hearing as his statement of decision. The minute order for April 16, 1986, stated, "No prejudicial abuse of discretion shown in that substantial evidence supports decision of LAFCO."

Judge Newman granted the City's motion based on his finding that LAFCO's written statement of determinations did not comply with section 56425 (formerly section 56427) and was legally inadequate. He stated, "I didn't really think there was any problem with substantial evidence, substantial evidence to support the decision. [¶] The question is whether the findings meet the requisite requirements of the statute and are specific enough. [¶] I don't think they are, and so I'm going to send it back. [¶] I'm sending it back with the order that they make findings that meet the requirements of the statute with specificity. . . ." Accordingly, the court's minute order for April 16, 1986, states, "Remanded for more specific findings."

In a decision after submission filed on April 22, 1986, Judge Newman held that CEQA was not applicable in this case. Neither an environmental impact report nor a negative declaration by LAFCO was required. The sphere decision did not sufficiently relate "to the effect of proposed changes in the physical world."

The judgment for peremptory writ of mandate filed on June 3, 1986, referred to the aforementioned rulings, and ordered LAFCO to "set aside its prior decision" and to "adopt a new sphere of influence for the City pursuant to the procedures set forth in and required by Government Code Sections 56425 and 56427," requiring a public hearing. The judgment

further ordered that LAFCO "adopt written determinations which include each of the specific factors set forth in Government Code Section 56425, and set forth the factual basis for LAFCO's decision as to the new sphere of influence for the City."

### F. *LAFCO's Motion to Reconsider.*

At a meeting on July 9, 1986, LAFCO unanimously approved a revised written statement of determinations which more completely reflected the earlier findings. "Disqualified" commissioners were not present during this proceeding. LAFCO also filed a motion for reconsideration, contending that they should not be required to hold a new evidentiary hearing. LAFCO's motion for reconsideration was denied.[6] LAFCO then filed a notice of appeal and the City followed with a notice of cross-appeal.

### DISCUSSION

### I. *LAFCO's Decision Is Valid Under the Knox-Nisbet Act, Now the Cortese-Knox Act.*

The City contends that LAFCO's decision is invalid because the Knox-Nisbet Act and Cortese-Knox Act mandate that, absent exceptional circumstances not present herein, a city shall have a sphere of influence beyond its existing boundaries. The City further contends that LAFCO's decision was not supported by substantial evidence and that it was based on legally inadequate findings.

We find that the City's contentions lack merit. Our opinion is rendered with the applicable standards of review in mind. ■ As the Supreme Court stated, "LAFCO is an agency with large discretionary powers." (*Bozung* v. *Local Agency Formation Com., supra,* 13 Cal.3d at p. 288.)

In *Simi Valley,* the court held that decisions of LAFCO are reviewable only to determine if they are supported by substantial evidence. (51 Cal.App.3d at pp. 685-686.) The court explained that section 56006 of the District Reorganization Act then in effect "expressly makes applicable the substantial evidence standard for review . . . ." (*Id.,* at p. 686.) Section 56006 was superseded in virtually identical language by section 56107 of the Cortese-Knox Act which provides: "This division shall be liberally

---

[6] The issue of whether the motion for reconsideration was properly denied is not addressed in this opinion. A ruling on this issue raised by LAFCO on appeal is unnecessary in view of our disposition.

construed to effectuate its purposes. No change of organization or reorganization ordered under this division and no resolution adopted by the commission making determinations upon a proposal shall be invalidated because of any defect, error, irregularity, or omission in any act, determination, or procedure which does not adversely and substantially affect the rights of any person, city, county, district, the state, or any agency or subdivision of the state. All determinations made by a commission under, and pursuant to, this division shall be final and conclusive in the absence of fraud or prejudicial abuse of discretion. Prejudicial abuse of discretion is established if the court finds that any determination of a commission or a legislative body was not supported by substantial evidence in light of the whole record."

A case cited by the City, *City of Livermore* v. *Local Agency Formation Com.* (1986) 184 Cal.App.3d 531, 543 [230 Cal.Rptr. 867], explained, "LAFCO does not have the burden of showing Knox-Nisbet compliance. Rather, its actions are presumed to comply with Knox-Nisbet because LAFCO was formed to implement Knox-Nisbet. Only if a local agency formation commission's interpretation of Knox-Nisbet is 'arbitrary, capricious, or entirely lacking in evidentiary support' [citations], will that interpretation be reversed by a court." The court noted "the rule that 'reasonable constructions by administrative agencies of their statutory mandates are entitled to great weight and should be respected by courts. . . .' [Citation.]" (*Ibid.*)

## A.  *The Sphere Decision Is Within the Statutory Mandate.*

■  Contrary to the City's arguments, no statutory provision requires that LAFCO adopt a sphere of influence beyond a city's existing boundaries. LAFCO exercised its discretion pursuant to applicable Government Code sections, including section 54774, superseded by section 56425.[7]

Nothing in the statute or the case law indicates that a sphere of influence need be larger than the boundaries of the city. A sphere of influence is a flexible planning and study tool to be reviewed and amended periodically as appropriate. (See §§ 56076, 56425, subd. (b), 56427 and 56428.) A sphere can be amended to include a larger area at later dates. Section 56425, subdivision (b) establishes a duty on the part of LAFCO to "periodically

---

[7] Section 56425 provides in pertinent part that "[i]n order to carry out its purposes and responsibilities for planning and shaping the logicial and orderly development and coordination of local governmental agencies so as to advantageously provide for the present and future needs of the county and its communities, the commission shall develop and determine the sphere of influence of each local governmental agency within the county. . . ."

review and update the adopted sphere" to reflect changed circumstances. Similarly, section 56427 specifically provides that "[t]he commission shall adopt, amend or revise spheres of influence after a public hearing called and held for that purpose." Section 56428 facilitates amendment or revision of a sphere adoption upon request by the affected agency.

Obviously, the sphere adopted for a city is important. Annexation, for example, cannot be approved until LAFCO has established and duly considered relevant spheres of influence. (See *Resource Defense Fund* v. *Local Agency Formation Com.* (1983) 138 Cal.App.3d 987 [188 Cal.Rptr. 499].) This factor, however, does not support the City's contention that LAFCO must adopt a sphere beyond a city's existing boundaries. Nothing in the statute prevents LAFCO from taking joint action, i.e., taking steps to approve a proposed annexation while generating the necessary amendment to the sphere of influence as may be occasioned by annexation. The process for sphere adoption and annexation are not exclusive.

B. *LAFCO's Decision Is Supported by Substantial Evidence in the Record.*

The record upholds the trial court's unequivocal finding that substantial evidence existed to support the sphere of influence decision of LAFCO. Volume I of the administrative record contains a transcript of the testimony of witnesses at the proceedings on November 14, 1984, and January 9, 1985. Other volumes contain correspondence in favor of and in opposition to the sphere proposed by the City.

Although contrary views were expressed and considered, compelling evidence in support of LAFCO's decision was presented through the testimony of the following witnesses, among others: Arthur Whizin, Rad Sutnar, William D. Ross, Alan Satterlee, and Boyd Zonotelli. This testimony was corroborated by correspondence in support of the limited sphere decision. Substantial evidence was presented regarding important services and facilities which were and would be provided for the area through the county rather than the City. Concerns about unwanted urbanization, lack of land use control and lack of affordable housing were also expressed in opposition to the sphere proposed by the City.

The evidence in support of the sphere adopted by LAFCO addressed the following factors listed in section 56425: "(1) The present and planned land uses in the area, including agricultural and open-space lands. [¶] (2) The present and probable need for public facilities and services in the area. [¶] (3) The present capacity of public facilities and adequacy of public services

which the agency provides or is authorized to provide. [¶] (4) The existence of any social or economic communities of interest in the area . . . ."

C. *The Court Erred in Granting the Writ Based on Allegedly Inadequate Findings.*

■ Though convinced that substantial evidence supported LAFCO's decision, the trial court nevertheless ordered the decision set aside based on what it deemed to be an inadequate written statement. We find this order to be incorrect and reverse the court's judgment for this reason. The trial court's ruling is contrary to section 56107 (quoted on pp. 489-490, *ante*) which expressly provides that the "division shall be liberally construed to effectuate its purposes" and that the sole inquiry on review shall be whether there was "fraud or prejudicial abuse of discretion," i.e., whether the determination "was not supported by substantial evidence in light of the whole record."

Section 56107 covers the division which includes section 56425, the section pertaining to the written statement of determinations. Section 56107 directs that technical noncompliance with other provisions of the act should not invalidate the proceedings. The written statement in this case, though obviously not a model under section 56425, essentially fulfilled its function in linking evidence before LAFCO to the decision reached by LAFCO in a sufficiently organized fashion to allow Judge Newman to decide that the decision was supported by substantial evidence. Similarly, although it was not part of his ruling in the interlocutory proceedings, Judge Shimer noted that the City's case was "very, very, very weak" and indicated that the evidence in support of LAFCO's determination was substantial. The written findings were part of the record which Judge Shimer reviewed.

Former Government Code section 56006 of the District Reorganization Act and former Government Code section 54775.2 of the Knox-Nisbet Act were virtually identical to section 56107. The continuity in these provisions mandating liberal construction is persuasive. In sum, it appears that under section 56107, the problems which the trial court found with the written statement were the type of concerns which must not be used to reverse decisions of LAFCO.

Additionally, the written findings are substantially compliant with the statutory requirements for written statements contained in section 54774 of the Knox-Nisbet Act and section 56425 of the Cortese-Knox Act. A comparison between the written statements required by section 56425 and the

actual written findings in the record supports our conclusion of substantial compliance.[8]

## II. *CEQA Is Not Applicable to These Proceedings.*

■ The City appeals from Judge Newman's ruling that "[t]he sphere of influence decision in this case is not a project subject to CEQA." In his decision after submission, the judge explained: "The decisions of the California Supreme Court in *Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 263 [118 Cal.Rptr. 249, 529 P.2d 1017] and of the Court of Appeal in *Simi Valley Recreation and Park Dist.* v. *Local Agency Formation Com.* (1975) 51 Cal.App.3d 648 [124 Cal.Rptr. 635], when read together, make clear that adoption or amendment of a sphere of influence requires an EIR or [negative] declaration if the decision on the sphere of influence '. . . relates to the effect of proposed changes in the physical world which a public agency is about to either make, authorize or fund, not to every change of organization or personnel which may affect further determinations relating to the environment.' *Simi Valley [Recreation & Park Dist.* v.

---

[8]

| Required Findings | Written Findings in Record |
|---|---|
| "(1) The present and planned land uses in the area, including agricultural and open-space lands." | "Some residential development is now occurring. Plans provide for additional commercial and industrial development primarily along the freeway." "No agricultural preserves would be affected by adoption of this sphere of influence." |
| "(2) The present and probable need for public facilities and services in the area." | "Present services needs are now being provided by the city, the County, and special districts and cover the full range of municipal type services. Future needs are expected to be provided in a similar manner, controlled by the amount of growth." "The city indicates that its residential development is the maximum planned for the city." |
| "(3) The present capacity of public facilities and adequacy of public services which the agency provides or is authorized to provide." | "The city operates under the contractual plan. Additional services could be contracted for in accord with the city's ability to pay for such services." "The city provides services through special districts, contractual agreements, and city staff." |
| "(4) The existence of any social or economic communities of interest in the area if the commission determines that they are relevant to the agency." (§ 56425, subd. (a).) | |

*Local Agency Formation Com.*], *supra,* at 666. [¶] The amendment of the sphere of influence here is in the latter category. It is not a project subject to CEQA. Therefore neither an EIR nor a negative declaration is required. See also 63 Ops. Atty. Gen. 758 (1980)."

We agree with Judge Newman's ruling. The record supports LAFCO's position that its sphere decision could not have a "significant effect on the environment," defined in Public Resources Code section 21068 as "a substantial, or potentially substantial, adverse change in environment." (See also CEQA guidelines, Cal. Admin. Code, tit. 14, § 15378, subd. (a), defining "project," cited on p. 496, *infra.*)

We are not unmindful of the requirement articulated by the Supreme Court as well as the Second Appellate District that CEQA " 'be interpreted in such manner as to afford the fullest possible protection to the environment within the reasonable scope of the statutory language' [citation], and '[i]t is, of course, too late to argue for a grudging, miserly reading of CEQA.' [Citation.]" (*Simi Valley Recreation & Park Dist.* v. *Local Agency Formation Com., supra,* 51 Cal.App.3d at p. 663, citing in part *Bozung* v. *Local Agency Formation Com., supra,* 13 Cal.3d at p. 274.) We also recognize that "[i]t is not, however, too late to recognize that CEQA was not intended to and cannot reasonably be construed to make a project of every activity of a public agency, regardless of the nature and objective of such activity. . . ." (*Simi Valley, supra,* 51 Cal.App.3d at p. 663; fn. omitted.)

Not all of LAFCO's decisions, particularly sphere of influence determinations, require an EIR or negative declaration. In *Simi Valley,* the court held that LAFCO's determination approving the detachment of 10,000 acres of undeveloped land from territory within the Simi Valley Recreation and Park District was not invalidated by LAFCO's failure to prepare an EIR or negative declaration. The court found that the "detachment in this case did not make any change whatever in the uses to which the land might be put." (51 Cal.App.3d at p. 666.)

The court in *Simi Valley* observed that the situation was quite different in *Bozung.* That case involved LAFCO's approval of an annexation which removed 667 acres of land from the county's zoning authority into the City of Camarillo.

While the zoning authority had blocked development of the land, the City had prezoned the property so as to permit development. It was clear that the land used for agriculture before annexation would, upon annexation, be developed for residential, commercial and recreational uses in the

near future. The evidence was overwhelming that LAFCO's approval of the annexation would culminate in a significant, adverse physical change to the environment. Additionally, LAFCO's approval of annexation was an irrevocable step as far as LAFCO was concerned. Under these circumstances, the Supreme Court in *Bozung* held that LAFCO was required to address itself to procedures set forth in CEQA.

As noted in *Simi Valley,* the *Bozung* opinion "dealt only with the situation where LAFCO approval was a necessary step in the development and in effect constituted an entitlement for use for such development." (51 Cal.App.3d at p. 665.) The Supreme Court did not hold that every annexation approval by LAFCO was subject to CEQA. (13 Cal.3d at p. 281.) Similarly, it did not hold that every sphere adoption by LAFCO would have a significant effect on the environment so as to compel compliance with CEQA. The court noted, "There is nothing final about a spheres of influence plan. Only the 'probable' boundaries of local governmental agencies must be established; the LAFCO must 'periodically review and update the spheres of influence . . . .' [Citation.]" (13 Cal.3d at p. 273.)

The court in *Bozung* did observe that Government Code section 54774 of the Knox-Nisbet Act provided that the "'spheres of influence, after adoption, shall be used by [LAFCO] as a factor in making regular decisions on proposals over which it has jurisdiction.'" (*Id*. at pp. 273-274.) The Cortese-Knox Act contains similar provisions. Section 56375.5 provides that determinations by LAFCO regarding annexation "shall be consistent with the spheres of influence" of the affected local agencies. As the Supreme court noted, "the spheres of influence plan is intended as the basis for LAFCO involvement in county development." (*Id*. at p. 273.) This consideration did not change the Supreme Court's analysis, however. The fact that spheres of influence are recognized as important factors in annexations does not compel the conclusion that they are per se "projects" subject to CEQA. There is no support for this contention in *Bozung* or any other case cited by the parties.

While this case is similar to *Simi Valley,* it is distinguishable from *City of Livermore, supra,* 184 Cal.App.3d 531, as well as *Bozung*. In *City of Livermore,* LAFCO had implemented revised sphere of influence guidelines. The court held that the guideline revisions constituted a "project" requiring compliance with CEQA, and explained: *"Simi Valley* involved a LAFCO decision regarding one detachment, a LAFCO decision that was not a choice between conflicting plans or schemes. The LAFCO action here was not one plan, nor a slight reorganization in administration, but a major policy shift that would affect land use throughout the entire region. LAFCO

cannot extend the holding of *Simi Valley* to cover this situation. [Citation.]" (184 Cal.App.3d at pp. 539-540.)

With the exception of the *City of Livermore* case, the foregoing authorities were decided prior to the enactment of Public Resources Code section 21080 which, as LAFCO concedes, broadens the class of activities deemed to be a "project" subject to the requirements of CEQA. Nevertheless, the rationale behind the aforementioned authorities, including *Simi Valley* is still persuasive and leads to the conclusion that the adoption of the sphere in this case is not subject to the requirements of CEQA. This conclusion is supported when section 21080 is considered in conjunction with other statutory provisions of CEQA and the guidelines set forth in title 14, California Administrative Code, section 15000 et seq.

Public Resources Code section 21080, subdivision (b)(10) specifies that the division does not apply to "classes of projects designated pursuant to Section 21084" which, in turn, refers to guidelines adopted pursuant to section 21083 regarding projects exempt from the provisions of CEQA. Essentially, these exempt projects do not result in a significant effect on the environment. (See Pub. Resources Code, §§ 21083 and 21084; and CEQA guidelines, especially Cal. Code Regs., tit. 14, § 15378.) LAFCO's decision here is one of those exempt projects; it is exempt under section 15378 of the CEQA guidelines defining a CEQA "project" as "the whole of an action, which has a potential for resulting in a physical change in the environment, directly or ultimately."

The inapplicability of CEQA to LAFCO's decision in this case is supported by other provisions in the act and its guidelines, including those relating to the act's legislative purpose. (See e.g., Pub. Resources Code, §§ 21000, 21001, 21060.5, 21080, subd. (b), 21084; and CEQA guidelines, Cal. Code Regs., tit. 14, §§ 15002, 15378, 15382, 15384.)

In deciding whether LAFCO was bound to comply with CEQA in the *Bozung* case, the Supreme Court noted: "In this effort we must be guided by the principle that 'every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.' [Citation.] This rule applies although the statutes to be harmonized appear in different codes. [Citation.]" (13 Cal.3d at p. 274, fn. 7.) In accord with this principle, we conclude that the CEQA provisions do not apply to LAFCO's sphere decision in this case.

III. *Section 84308 Is Not Applicable to These Proceedings.*

■ The trial court found that the conflict of interest provisions contained in Government Code section 84308 of the Political Reform Act

applied to the sphere of influence proceedings. This was the basis of the interlocutory judgment setting aside LAFCO's first decision of January 9, 1985. LAFCO and the FPPC as amicus curiae contend this was error.[9]

There is no definitive statutory or case law on the issue and the area is not free from conflicting views; nevertheless, we find that section 84308 does not apply because a sphere of influence is not "a license, permit or other entitlement for use." The trial court's ruling to the contrary was erroneous as a matter of law.

Subdivision (a) of section 84308 provides that " '[l]icense, permit, or other entitlement for use' means all business, professional, trade and land use licenses and permits and all other entitlements for use, including all entitlements for land use, all contracts (other than competitively bid, labor, or personal employment contracts), and all franchises."

Subdivision (c) of section 84308 provides in pertinent part as follows: "(c) Prior to rendering any decision in a proceeding involving a license, permit or other entitlement for use pending before an agency, each officer of the agency who received a contribution within the preceding 12 months in an amount of two hundred fifty dollars ($250) or more from a party or from any participant shall disclose that fact on the record of the proceeding. No officer of an agency shall make, participate in making, or in any way attempt to use his or her official position to influence the decision in a proceeding involving a license, permit, or other entitlement for use pending before the agency if the officer has willfully or knowingly received a contribution in an amount of two hundred fifty dollars ($250) or more within the preceding 12 months from a party or his or her agent, or from any participant, or his or her agent . . . ."

In response to LAFCO's request for advice, staff counsel for the FPPC's legal division advised LAFCO in a letter dated June 14, 1985, that section 84308 applies to annexations, but not sphere of influence proceedings. This letter, addressed to Assistant County Counsel Lloyd W. Pellman, referenced and enclosed a copy of another advice letter dated June 6, 1985, from the FPPC to Donald Fallon, deputy county counsel, Santa Clara County (hereinafter Pellman letter and Fallon letter, respectively).

While noting that "[t]he term 'entitlement for use' does not have a set legal meaning," the FPPC expressed the view in the Fallon letter that

---

[9] The City as well as LAFCO and FPPC have emphasized the importance of resolving this issue regarding the applicabilty of section 84308 to sphere of influence proceedings. Accordingly, we proceed to address this issue although it may not be essential to the final disposition in this case.

"[s]ection 84308 does not cover proceedings where general policy decisions or rules are made or where the interests affected are many and diverse." The staff concluded, " 'Sphere of influence' plans are general planning documents adopted by LAFCOs which are intended to guide them in their determination of specific proposals. It is our view that these types of general plans do not create any 'entitlement for use' within the meaning of section 84308. Thus 'sphere of influence' proceedings are not covered by this law."

The advice of the FPPC as an agency empowered by the Legislature to interpret and enforce the Political Reform Act is entitled to weight. (See Gov. Code, §§ 83111, 83112, 83113 and 83114 of the Political Reform Act regarding the FPPC's responsibilities regarding written advice. See also *National Muffler Dealers Association, Inc.* v. *United States* (1979) 440 U.S. 472, 476-477 [59 L.Ed.2d 519, 524-525, 99 S.Ct. 1304]; *Rivera* v. *City of Fresno* (1971) 6 Cal.3d 132, 140 [98 Cal.Rptr. 281, 490 P.2d 793]; *Mission Pak Co.* v. *State Bd. of Equalization* (1972) 23 Cal.App.3d 120 [100 Cal.Rptr. 69].) We also recognize, as the City asserts, that the ultimate resolution of legal issues regarding statutory interpretation lies with the courts. (See *Carmona* v. *Division of Industrial Safety* (1975) 13 Cal.3d 303, 310 [118 Cal.Rptr. 473, 530 P.2d 161]; *Selby* v. *Department of Motor Vehicles* (1980) 110 Cal.App.3d 470, 474-475 [168 Cal.Rptr. 36].)

In addition to considering the FPPC's advice and the record on appeal, we have considered the language of the entire Political Reform Act. We have also considered the language of section 84308 as well as the manner in which it harmonizes with the Political Reform Act and related statutory provisions in CEQA and the Knox-Nisbet Act, now the Cortese-Knox Act. Based on our review, we not only find that the FPPC's opinion is entitled to great weight, but we also find it to be correct as a matter of law.

The City contends, unpersuasively, that because a sphere is a precondition to annexation, it necessarily involves an "entitlement for use." The City's reasoning did not compel a finding that a sphere decision was necessarily a "project" subject to CEQA, even though an annexation was viewed as a "project" subject to CEQA in certain cases. Similarly, the City's reasoning does not compel a finding that the sphere proceeding involves "an entitlement for use" subject to section 84308, simply because annexations are viewed as proceedings subject to section 84308.

As previously discussed, the sphere decision is only a preliminary step in the annexation process and not the final discretionary decision by LAFCO. The sphere decision is subject to periodic review, amendment and revision. Furthermore, the sphere itself does not create land use designations.

In sum, we find that the basis for adopting the FPPC's interpretation of section 84308 is compelling and consistent with a plain reading of the statute. We therefore hold that section 84308 is not applicable to the sphere of influence proceedings in this case.

CONCLUSION

This court concurs with the following rulings of the trial court: (1) CEQA is not applicable to the sphere of influence decision by LAFCO; (2) there is substantial evidence to support the sphere adoption by LAFCO; and (3) there is no prejudicial abuse of discretion by LAFCO in this case.

This court, however, disagrees with the trial court's ruling that LAFCO's written statement of determinations was legally inadequate and that the sphere adoption should therefore be set aside. We reverse the trial court's judgment on this ground.

We also disagree with trial court's ruling on the applicability of Government Code section 84308 which formed the basis of the interlocutory judgment setting aside LAFCO's first sphere decision of January 1985. Section 84308 is not applicable to the sphere of influence proceeding.

DISPOSITION

The judgment is reversed, and the cause remanded to the trial court with directions to enter a judgment denying the petition for writ of mandate consistent with this opinion. Each side to bear their own costs.

Klein, P. J., and Danielson, J., concurred.